THE CITY OF SPRINGFIELD to use of C. D. McEVILLY, Respondent, v. LYDIA A. KNOTT, Appellant.

St. Louis Court of Appeals, May 3, 1892.

1. **Municipal Corporation:** SPECIAL TAX BILLS: PROVIDING FOR WORK BY ORDINANCE. Where a city is authorized to act by ordinance, as where the statute provides that a city of the third class may provide by ordinance for the curbing and guttering of streets, the authority may be exercised by an act, termed a resolution, but adopted and approved by the mayor, with all the formalities required in the enactment of an ordinance.

2. **Special Tax Bill:** IRREGULARITIES IN PROCEEDINGS. A special tax bill for public work will not be invalidated for the want of literal compliance with a regulation which does not affect the substantial rights or interests of the property-holders. Accordingly, where it was provided that an estimate of the cost of certain work should be made

at the direction of a city council, and be submitted to the council before a contract for the work was let, and where it appeared that the estimate was in fact made and was filed with the clerk of the council, it was *held*, that, in the absence of evidence showing that the contract price was unreasonable, a special tax bill for the work should not be declared invalid, because the journal of the council failed to show either the submission of the estimate to the council or any direction by the council for the making of this estimate.

*Appeal from the Greene Circuit Court.* — HON. W. D. HUBBARD, Judge.

AFFIRMED.

*Goode & Cravens* and *Jas. R. Vaughan*, for appellant.

*Barbour & Stellwagen*, for respondent

ROMBAUER, P. J. — The plaintiff, who is the assignee of a special tax bill, issued to his assignor by the city of Springfield for work done in curbing and guttering a public street of said city in front of defendant's property, recovered a special lien judgment in this proceeding against said property. The defendant, appealing, assigns for error that the court admitted incompetent evidence; that the evidence introduced fails to show a right of recovery in the plaintiff, and hence, the judgment is not warranted by the evidence; and that the court erred in its declarations of law.

It was admitted upon the trial that the city of Springfield is a city of the third class, and the first inquiry which arises is, whether the plaintiff has given any substantial evidence tending to show that all preliminary steps have been taken by the city, which its charter makes essential before the defendant's property can be subjected to a charge for street improvements of this character.

Cities of this class are authorized by law to enact

ordinances for curbing and guttering all streets, avenues and alleys, after the said streets, avenues and alleys have first been brought to grade, and for such work the assessment shall be made for each block separately on all lots and pieces of ground on either side of such street or avenue. R. S. 1889, sec. 1495.

These assessments shall be known as special assessments for improvements, and shall be levied and collected as a special tax, and a special tax bill shall issue therefor, and shall be paid in the manner provided by the ordinance. R. S. 1889, sec. 1496.

Before the council shall make any contract for curbing and guttering any street, an estimate of the cost thereof shall be made by the proper officer and submitted to the council, and no contract shall be entered into for any such work or improvement for a price exceeding such estimates. R. S. 1889, sec. 1497.

When the council shall deem it necessary to curb and gutter any street for which a special tax is to be levied, the council shall by resolution declare such work or improvements necessary to be done, and cause such resolution to be published in the newspaper doing the city printing for two consecutive weeks; and if a majority of the resident owners of the property, liable for taxation therefor, shall not, within ten days thereafter, file with the clerk of said city their protest against such improvements, then the council shall have power to cause such improvements to be made, and to contract therefor, and to levy the tax as herein provided. R. S. 1889, sec. 1498.

The plaintiff introduced in evidence a general ordinance of the city of Springfield, defining in detail *what shall constitute first-class curbing and guttering in all cases;* also a general ordinance of said city, providing that whenever the council may deem it necessary to curb and gutter any street they shall instruct the city

engineer to make an estimate of the cost of the improvements proposed to be made, and the engineer shall at once proceed to make such estimate and submit the same with specifications of the work proposed to be done to the council as soon thereafter as may be practicable. The same ordinance then goes on to say: "Before proceeding further with said improvement, the council shall by resolution declare such improvements necessary to be done, and cause such resolution to be published in the newspaper doing the city printing for two consecutive weeks." The ordinance then provides for the doing of the work under contract let on bids, unless a majority of the abutting property-owners protest as provided by section 1498, *supra.* The same ordinance has a further provision to the following effect: "All work under the contracts entered into under the provisions hereof shall be carried on under the supervision of the city engineer and street committee, who shall personally inspect the work as it progresses, and see that the same is done in accordance with the specifications and contract governing the same. On the completion thereof, if in the opinion of the city engineer and street committee such work has been done according to such specifications and contract, they shall report to the council. The council shall thereupon levy a special tax," etc.

The plaintiff also gave evidence of the adoption of the following resolution, passed by the council and approved by the mayor: "Resolved that the mayor and council of the city of Springfield deem it necessary to curb and gutter St. Louis street from the public square to Jefferson street, on both sides thereof, and, also, to curb and gutter Jefferson street from Walnut street to St. Louis street, on both sides of said street, *with curbing and guttering of the first class.*"

The plaintiff also gave evidence tending to show that the city engineer did make a preliminary written estimate of the cost of the work, estimating it at $1.75 per running foot, and filed it with the city clerk. The city engineer testified that he did not know whether the council ordered him to make this estimate, but that was the custom, and he remembered making it. No written evidence of the order of the council, or of the report of the engineer, was produced at the trial. The engineer advertised for bids by handbills, but it was not shown that that mode of advertising was directed by the council. The plaintiff's assignor made a bid of $1.65 per running foot, which was the lowest bid. The council accepted the bid by a unanimous vote, and a contract at that price was let to the plaintiff's assignor by the street committee, he executing a bond for the faithful performance of the work, which was approved by the mayor. The plaintiff also gave in evidence the written report of the street committee to the mayor and council that the work in question had been completed, and an order of the council to issue a special tax bill therefor to the contractor. No evidence whatever was offered by the defendant which had any tendency to show that the work was not done by the contractor in strict conformity with his contract, nor that the price, at which the contract was awarded, was not the reasonable value of the work.

The appellant's main contention is that, as the plaintiff failed to show that the work sued for was authorized by a special ordinance requiring the work to be done, the plaintiff's claim must fail for the want of a valid foundation upon which to rest. This argument rests on the proposition that cities of the third class under section 1495, *supra*, are empowered by ordinance *only* to provide for the curbing and guttering of their streets, and, therefore, must exercise that power in

each special instance, by ordinance, the adoption of which requires a concurrent action on part of the council and mayor, and that they cannot do so by resolution of the council, which *may* become effective without approval of the mayor. It has been repeatedly held in this state that, where power is vested by the charter in the mayor and councilmen to do a certain act, the act cannot be legally done by the council alone (*Saxton v. Beach,* 50 Mo. 488; *Saxton v. St. Joseph,* 60 Mo. 153); but we are not aware of any case that pointedly decides that where such power has to be exercised by ordinance, it cannot be exercised by resolution, provided the resolution is adopted by the council and approved by the mayor, with all the formalities required in the passage of ordinances. There is an intimation in the opinion of the court in *Saxton v. Beach, supra,* and also in *Cape Girardeau v. Fougeau,* 30 Mo. App. 551, that this might be done. In this case it appears by the record that the resolution was adopted by a unanimous vote of the council upon a call of the ayes and nays, and that it was approved by the mayor, and published in the official paper of the city of Springfield, in the same manner as ordinances are required to be published, and the resolution upon its face purports to be the joint act of the mayor and council. To hold, therefore, that the joint act of the council and mayor is invalid, solely because the instrument evidencing it is called a resolution and not an ordinance, would be adhering to a mere form without giving effect to substantial requirements.

Nor can we, in the absence of evidence having any tendency to show that the contract price of this work was not reasonable, reverse the judgment on the ground that it does not appear by the journals of the council that it ordered the city engineer to make an estimate prior to ordering the work, and that it does not appear by the journal of said body that the engineer submitted

the estimate made by him to the council. It does appear by the evidence of the person, who occupied the position of city engineer when this work was ordered, that he did make a written estimate of the cost of this work, and he thought he filed it with the city clerk, as it was his custom to do so. Whether it was ever submitted to the council, he did not know. That estimate was $1.75 per running foot, or ten cents per running foot in excess of the contract price at which plaintiff's assignor did the work.

In *Sheehan v. Owen*, 82 Mo. 458, 465, where the defendant sought to defeat the claim of the contractor, because no plans and profiles of the work had been made as required by ordinance, and because the evidence was merely inferential that the mayor and council had acted concurrently in awarding the contract, and because it did not affirmatively appear that the plaintiff was the lowest and best bidder, the court in disposing of these objections said: "The work has been done by plaintiff. No complaint is made that it was not done according to the contract, or that plaintiff is in any manner charged with notice of alleged irregularities in the proceedings of the council or the acts of the city officials, and, while there may have been some irregularities, the ordinances were substantially complied with by the city authorities, and nothing done or omitted which could possibly have affected injuriously the interests of the defendant or other property-holders, and we are not inclined to turn a plaintiff out of court who has given his time and expended his money in the improvement of their property, on mere technicalities, which in no manner affect the substantial rights or interests of the parties." This case is approvingly cited in the recent decision of *Cole v. Skrainka*, 105 Mo. 309, where Judge BLACK adds: "This court has never adopted the extreme view

that, in order to recover for these local improvements, the plaintiff must show a literal compliance with all the provisions of the ordinances. Distinction must be made between those matters which affect the substantial rights of the parties, and those which are formal or directory."

The court, at the request of the defendant, declared the law as follows: "That, before the city council could make the improvements referred to in plaintiff's petition so as to bind the defendant to the payment of a tax bill issued for the cost of the same, it was essential that a declaratory resolution, as provided in section 34 of articles regulating cities of the third . class, should be first duly passed and published as required in said section.

"That, before the council could lawfully issue or direct by an ordinance that a tax bill issue, it was essential that the street committee, or a majority of the same, and the city engineer should report to the council that the work done abutting defendant's property was so done according to the contract and specifications provided.

"That, this action being upon a tax bill for the price of the work done, the only evidence admissible (as a basis for a tax bill, or recovery of such price), that the work was done according to the contract and specifications, is the report of the city engineer and a majority of the street committee."

We have examined other declarations of law asked by the defendant, and conclude that, under the uncontroverted facts of this case, there is no error in their refusal by the court. Some had reference to the necessity of a special ordinance for this work. Their impropriety is disposed of by what is above said. Others declared as a matter of law, that there was no evidence before the court that the council had ordered

the engineer to make an estimate, or that he made it and submitted it to the council as required by the ordinances.    These were based on the proposition, that record evidence of such fact was essential to establish it, and were rightly refused.    Others again declared that bringing the street to grade was an essential prerequisite to constructing a curb.    There was, as we understand the record, no evidence that the street had not been graded prior to the resolution providing for the curbing.    There was some evidence offered by the defendant, which was contradicted by the plaintiff, that, owing to a difference between the grade as established by ordinance and the grade as physically established on the surface of the street, the curb set was in some places above and in some places below the grade established by ordinance.    There was no evidence that this variation, if it existed, had an injurious effect on the value of the curb.    As the case was tried by the court without the intervention of a jury, and as the instructions offered on that subject taken in one sense were opposed to all the evidence, and taken in another sense were misleading, we are not justified in reversing the judgment on account of their refusal, as for error materially affecting the merits of the action.

All the judges concurring the judgment is affirmed. So ordered.